USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 94-1260 MICHAEL G. ROY, Plaintiff, Appellant, v. INHABITANTS OF THE CITY OF LEWISTON, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ ____________________ Before Torruella, Cyr and Boudin, Circuit Judges. ______________ ____________________ Walter Hanstein, III with whom William Maselli and Joyce, Dumas, ____________________ ________________ _____________ David & Hanstein, P.A. were on brief for appellant. ______________________ Edward R. Benjamin, Jr. with whom Daniel Rapaport and Preti, _________________________ ________________ _____ Flaherty, Beliveau & Pachios were on brief for appellees. ____________________________ ____________________ December 21, 1994 ____________________ BOUDIN, Circuit Judge. On August 13, 1991, around 9:00 _____________ p.m., officers Michael Whalen and Richard Mercer of the Lewiston Police Department were sent to investigate a domestic violence report at the home of Michael and Edith Roy. On arriving, Edith Roy told the police officers that Michael Roy ("Roy") was armed with two knives and had threatened to use them against any policeman who approached him. The policemen then went outside to the back of the residence and found Roy lying on the ground. Roy was roused--he had been drinking--and the officers then learned that a third officer, Randy Hausman, was on his way to the Roys' home to serve a summons on Michael Roy because of a complaint by another woman that Roy had struck her earlier that day. When Hausman arrived and read Roy his Miranda rights, Roy refused to acknowledge the reading or _______ accept the summons, so Hausman pushed it into Roy's pocket. The latter then became upset, stated "I'll show you," entered his home, and then--following out Edith Roy who was screaming--returned carrying a steak knife in each hand. In broad outline, what happened next is that the officers drew their side arms and ordered Roy to put down the knives. He advanced, flailing his arms while continuing to hold the knives. The officers retreated back to a sharp downward incline. After some maneuvering in which the officers repeated their warnings and made some effort to -2- -2- distract and disarm Roy, Roy made a kicking-lunging motion toward Whalen and Mercer. Whalen shot twice, striking Roy both times and injuring him badly. Roy was arrested and hospitalized. He ultimately recovered, and then brought the present action. The law suit, filed in state court and removed to federal district court, asserted claims against all three officers, the City of Lewiston, and the police chief. The claims, under 42 U.S.C. 1983 and state law, were based on charges that the three police officers had unreasonably used deadly force. The city and its police chief were claimed to be liable on the ground that they had not adequately trained the officers in non-lethal alternatives for subduing dangerous but intoxicated persons. The defendants moved for summary judgment based on affidavits reciting the facts just set forth and their belief that their conduct was reasonable. In response, Roy submitted affidavits and deposition materials of his own. He did not contradict the events just described but asserted that he had intended and was seeking to put the knives down when he was shot. He also proffered testimony from two witnesses who had seen the event. One, a teenager, said that he had not seen the kick or lunge; but Roy did not dispute that he had made some gesture of this kind. -3- -3- The other eyewitness had substantial experience with drunken prisoners as a corrections officer in the county jail. He was arguably qualified to give an opinion as to whether unreasonable force had been used, and there is an indication that he harbored doubts about the police conduct in subduing Roy. But in his deposition this eyewitness ultimately declined to go further than to say that he might have handled the matter differently. In other respects, his testimony confirmed a number of the details offered by the officers. A third affiant, with qualifications as an expert on police procedure, said that the officers could easily have arrested Roy without using firearms. He said that the officers should have been equipped with a noxious spray, colloquially known as red pepper mace. Because this spray was not made available to Lewiston police and because the expert thought that the police chief placed undue emphasis on guns, the expert was prepared to say that the training of the officers was inadequate. In a thoughtful opinion rendered on February 16, 1994, the district court granted the motions for summary judgment in favor of each defendant; as to the officers, the court said their conduct was objectively reasonable and protected ___ by qualified immunity. Roy has now appealed, challenging the grant of summary judgment as to each of the defendants. For -4- -4- reasons to be explained, we are mainly concerned with the section 1983 claim against Whalen; and although we might have rested on the district court's opinion, this case raises one important issue of general application. To lay the groundwork, we invoke the usual boilerplate propositions: summary judgment is proper if there is no genuine issue of material fact and the law otherwise warrants judgment for the moving party; the court must assume that a jury would resolve credibility issues and draw reasonable inferences in favor of the opposing party; and on appeal review of summary judgment is de novo. Fed. R. Civ. P. _______ 56(c); Rivera v. Murphy, 979 F.2d 259 (1st Cir. 1992).  ______ ______ Qualified immunity claims, in particular, are to be resolved before trial, where possible. Hunter v. Bryant, 502 U.S. 224 ______ ______ (1991). Section 1983 protects constitutional rights, and the constitutional standard for measuring Whalen's conduct has a surface clarity. The Supreme Court has instructed that the Fourth Amendment's search and seizure provisions control and that the use of deadly force incident to arrest depends solely on whether the officer's conduct was "objectively reasonable." Graham v. Connor, 490 U.S. 386, 397 (1989). ______ ______ Further, the Court has adopted a qualified immunity test for section 1983 actions that shields a "reasonable officer" -5- -5- judged by an objective standard. Anderson v. Creighton, 483 ________ _________ U.S. 635, 641 (1987). If these "reasonableness" tests were designed to mirror the standards of common-law negligence, it is doubtful whether summary judgment would be appropriate in this case, even though the underlying facts are fairly clear. After all, one might think that a hard look was warranted where three officers had to shoot and badly injure an intoxicated man who, although armed with two small knives, was flailing and stumbling about rather ineffectually. Further, Roy was prepared to offer an expert to say that the police conduct, quite apart from the lack of mace, was unreasonable. The most plausible ground given by the expert for this judgment was that the officers had been properly trained to ________ keep a considerable distance--such as 20 feet--from a suspect armed with a knife. In fact, two officers were only a couple of feet from Roy when he kicked and lunged; had they been further away, shots might not have been needed. The expert was prepared to testify that he had reviewed a tape of the scene and believed that the officers had room to retreat in three different directions. Judgments about reasonableness are usually made by juries in arguable cases, even if there is no dispute about what happened (qualified immunity is a different matter, see ___ Hall v. Ochs, 817 F.2d 920, 924 (1st Cir. 1987)). Of course, ____ ____ -6- -6- the facts might point so clearly toward reasonableness that no reasonable jury could decide for the plaintiff. But if this case were treated exactly like a case of careless driving by a postman, it might well seem to be one suited for trial. Most drunks with knives are disarmed without anyone shooting them, and here an expert was prepared to opine that the officers had been negligent and to explain why. But the Supreme Court's standard of reasonableness is comparatively generous to the police in cases where potential danger, emergency conditions or other exigent circumstances are present. In Graham v. Connor, 490 U.S. 386 (1989), the ______ ______ Court said that the "calculus of reasonableness" must make "allowance" for the need of police officers "to make split- second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Id. at 396-97. Cf. ___ ___ Daniels v. Williams, 474 U.S. 327 (1986) (negligence not a _______ ________ due process violation). Also pertinent is the Court's more general statement in Anderson v. Creighton addressed to qualified immunity for a ________ _________ Fourth Amendment violation. The Court used as its standard the "reasonable officer" and what "could reasonably have been thought lawful" by such an officer, 483 U.S. at 638, terms suggesting a measure of deference. The Court then quoted earlier decisions saying that immunity protects "all but the -7- -7- plainly incompetent or those who knowingly violate the law" or those who act where "the law clearly proscribed the actions" taken. Id. at 638-39. See also Malley v. Briggs, ___ ________ ______ ______ 475 U.S. 335, 343 (1986) (qualified immunity leaves "ample room for mistaken judgments"). What these precedents dictate is this: whether substantive liability or qualified immunity is at issue, the Supreme Court intends to surround the police who make these on-the-spot choices in dangerous situations with a fairly wide zone of protection in close cases. Decisions from this circuit and other circuits are consistent with that view.1 And in close cases, a jury does not automatically get to second-guess these life and death decisions, even though the plaintiff has an expert and a plausible claim that the situation could better have been handled differently. In theory, substantive liability and qualified immunity are two separate questions and, indeed, may be subject to somewhat different procedural treatment. In police misconduct cases, however, the Supreme Court has used the same "objectively reasonable" standard in describing both the constitutional test of liability, see Graham, 490 U.S. at ___ ______  ____________________ 1See, e.g., Gaudreault v. Municipality of Salem, Mass., ___ ____ __________ _____________________________ 923 F.2d 203 (1st Cir. 1990), cert. denied, 500 U.S. 956 _____ ______ (1991); Krueger v. Fuhr, 991 F.2d 435 (8th Cir.), cert. _______ ____ _____ denied, 114 S. Ct. 386 (1993); Reese v. Anderson, 926 F.2d ______ _____ ________ 494 (5th Cir. 1991); Ryder v. The City of Topeka, 814 F.2d _____ ___________________ 1412 (10th Cir. 1987). -8- -8- 397, and the Court's own standard for qualified immunity. Anderson, 483 U.S. at 639. It seems unlikely that this case ________ would deserve a different outcome even if the qualified immunity defense had not been raised. As a matter of legislative policy, one could argue for less latitude for armed officers, at least in the case of fleeing suspects who are not an immediate threat. But the Supreme Court's decisions make the objective reasonableness test a minimum constitutional standard for liability; a _______ ______________ legislature cannot afford less protection for citizens. ____ Tennessee v. Garner, 471 U.S. 1 (1985). There is nothing _________ ______ that prevents a legislature from being tougher on its police (e.g., by adopting stringent and specific firearms ____ regulations), or being more generous to victims (through compensation), or both. Against this background, we think that the district court properly granted summary judgment on the section 1983 claim in favor of Whalen. Perhaps a jury could rationally have found that Whalen could have done a better job; but in our view a jury could not find that his conduct was so deficient that no reasonable officer could have made the same choice as Whalen--in circumstances that were assuredly "tense, uncertain, and rapidly evolving . . . ." Graham, 490 U.S. at 397. Put differently, Whalen's ______ actions, even if mistaken, were not unconstitutional. -9- -9- Roy was armed; he apparently tried to kick and strike at the officers; he disobeyed repeated instructions to put down the weapons; and the officers had other reasons, already described, for thinking him capable of assault. Apart from the suggestion that mace should be carried by all policemen, Roy's expert nowhere explains in his affidavit how the police could have subdued Roy; and it is not obvious that it would have been a better solution (as the expert seems to suggest) for the police to retreat, leaving an intoxicated armed man on the premises--one who had just now committed an apparent felony in the presence of the police. Nor is it at all plain that the police could, or should, have kept their distance. Leaving aside the indications that Roy moved toward them, one might easily suppose that the best chance the police had to subdue him without shooting was to get close enough to push him over or wrest the weapons from him. The police may have done the wrong thing but they were not "plainly incompetent" nor were their actions "clearly proscribed." Anderson, 483 U.S. at 638-39. Cf. Floyd v. ________ ___ _____ Farrell, 765 F.2d 1, 5 (1st Cir. 1985) (conduct "at least _______ arguabl[y]" justified). We have labored over this single point--the Supreme Court's objective reasonableness standard--without any hope of articulating a more concrete or precise gloss of the Court's language. What can be said is that the term -10- -10- reasonableness is used in different ways in different contexts; and in this one--the use of deadly force by the police in dangerous situations--the Supreme Court has allowed more latitude than might be customary in a simple tort case involving careless driving. Terms like "plainly incompetent" or concepts like what "a reasonable officer could have believed" are inherently general, but they add nuance and provide a sense of direction. These phrases do not automatically lend themselves to effective jury instructions. On the contrary, this court has held that it would be unsuitable to instruct a jury that excessive force must be "clearly" established to justify liability; we reasoned that the term could confuse the jury into thinking that the burden of proof was something more than preponderance of the evidence, as in the formula "clear and convincing evidence" often used to heighten the burden of proof in fraud cases. Tatro v. Kervin, 1994 WL 663805 (1st _____ ______ Cir. 1994). But we are concerned here not with proof of raw facts but whether, on known or assumed facts, police behavior can be deemed egregious enough to submit the matter to a jury. The remaining defendants and the state claims were carefully addressed in the district court's decision, and we have little to add. The other officers did not use deadly force or encourage Whalen to do so. Compare Gutierrez- _______ __________ -11- -11- Rodriguez v. Cartagena, 882 F.2d 553 (1st Cir. 1989). As for _________ _________ the police chief and the town, nothing in the expert's affidavit would make anyone think that the failure to provide mace was so unusual or patently improper as to reflect "deliberate indifference" under the demanding standard of Canton v. Harris, 489 U.S. 378 (1989). The Eleventh Circuit ______ ______ so held on essentially similar facts in McKinney v. DeKalb ________ ______ County, Georgia, 997 F.2d 1440 (11th Cir. 1993). _______________ As for the claims under Maine law, Roy points out that 14 Maine Rev. Stat. Ann. 8104-A says that a government entity, with certain exceptions, is liable for "negligent acts" involving unspecified "machinery or equipment whether mobile or stationary." Roy asserts that this language must include the police use of firearms and establishes a bare negligence standard for this case. This is perhaps a literally permissible reading of an ambiguous statute but one that strikes the reader as a trifle unlikely. Roy's brief offers no precedent for reading this statute to apply to police weaponry. At the same time, another Maine statute provides explicit immunity for official discretionary action, 14 Maine Rev. Stat. Ann. 8111(1)(c), and Maine case law has construed this latter statute to apply to claims of excessive force. Leach v. Betters, 599 A.2d 424, 426 (Me. 1991) ("At _____ _______ best, the records support the conclusion that the officers -12- -12- may have used more force than was necessary but it contains no suggestion that they used more force than they reasonably thought to be necessary."). Given Leach, we have no reason _____ to think that Maine imposes more stringent limits on the police than does federal law; indeed, the reverse may be true. See Leach, 599 A.2d at 426 (possible exception for ___ _____ ________ "wanton" conduct). Affirmed.  ________ -13- -13-