Horan v. Laconia                          CV-95-519-JD  06/11/96
                    UNITED STATES DISTRICT COURT FOR THE
                           DISTRICT OF NEW HAMPSHIRE

Leslie M. Horan, et al.

        v.                                    Civil No. 95-519-JD

City of Laconia, et al.


                              O R D E R


     The plaintiffs brought this action as the executors of the
estate of Arthur Horan, alleging violations of Horan's Fourth
Amendment rights under 42 U.S.C. § 1983 and asserting a variety
of state law claims.  Before the court is the defendants' motion
for summary judgment (document no. 9).


                             Background

     On October 30, 1992, Arthur Horan contacted the Lake Shore
Hospital in Manchester, requesting admission to the hospital's
drug and alcohol abuse unit due to his recent drinking,
depression, and thoughts of suicide.  Horan was told that he
would be admitted if he could arrange for transportation to the
hospital from his location at the Sundance Motel in Laconia, New
Hampshire.  Horan contacted a former girlfriend, Kathleen
Rohelia, to arrange for such transportation.  Meanwhile, out of
concern for Horan's safety, the hospital counselor with whom
Horan had spoken contacted the Laconia Police Department.

Upon being informed of Horan's call for help, Sergeant Donald Irvin of the Laconia Police Department ordered Corporal Steven Clarke to the Sundance Motel to investigate the scene and sent Officer Gary Hubbard as a backup. Sergeant Irvin also responded to the call and, shortly after arriving at the scene, established telephone contact with his supervisor, Captain John Bieniarz. During his conversation with Irvin, Bieniarz referred to an incident fifteen years earlier in which Horan had "put his head through the window of one of our cruisers . . . all by himself, sittin' in the back seat and he want[ed] out, so he dove through the window and ended up in the pavement," and referred to Horan as a "nut," a "knife toting gun blasting fool," a "fighting, fucking fool," a "real wing-nut," and "another fucking wacko marine." Bieniarz instructed that Hubbard, also an ex-marine, make an attempt to contact Horan "marine to marine," and told Irvin to handle the situation in a "low key manner."

Following Bieniarz's instructions, Hubbard knocked on the door to Horan's motel room. At approximately the same time, Rohelia arrived and approached Horan's door, but was stopped and told to go to the office of the motel. Horan, either aware of the arrival of Rohelia's automobile or having heard Hubbard's knock, opened the door, holding a knife in his hand. Irvin, Clarke, and Hubbard immediately pointed their guns at Horan, and

2

told Horan to drop the knife. Horan walked toward Irvin and Clarke and in the direction of the motel office, which Rohelia had just entered.

Horan stopped advancing at a point approximately twelve to fifteen feet away from Clarke, eighteen feet from Irvin, and thirty-five feet from Hubbard. At this point, the parties' versions of the events diverge. Based on Horan's own testimony after the incident and the testimony of Clarke, Hubbard, and Rohelia, the plaintiffs claim that Horan lobbed the knife away in an underhanded motion, and that, after Horan had released the knife and after the knife had hit the ground, Irvin fired his gun at the plaintiff. The plaintiffs claim that Irvin shot once, striking Horan in his arm or his back and, after a measurable delay, fired a second shot, causing Horan to fall to the ground. The defendants claim that Horan brought his arm back in an overhand throwing motion, and that Irvin, believing that Horan was attempting to throw the knife at Hubbard, fired two shots in rapid succession as Horan was releasing the knife.

Horan died after, but not as a result of, the shooting. The plaintiffs, as executors of his estate, brought the instant action under 42 U.S.C. § 1983 alleging that the individual defendants seized Horan, used deadly force, and created the need to use deadly force in violation of Horan's rights under the

3

Fourth Amendment, and that the City of Laconia maintained an unconstitutional custom or practice by failing to properly hire, train, supervise, and discipline its police officers. The plaintiffs also seek recovery under state law against the individual defendants for assault and battery, negligent performance of duties, negligent use of dangerous instrumentalities, and against the municipal defendant under theories of respondeat superior liability, and negligent hiring, supervision, and training.

Discussion

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 113 S. Ct. 1845 (1993)), cert. denied, 115 S. Ct. 56 (1994). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking

4

summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Quintero de Quintero v. Aponte-Roque</u>, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiff, "`indulging all reasonable inferences in that party's favor.'" <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990)), <u>cert. denied</u>, 504 U.S. 985 (1992). However, once the defendant has submitted a properly supported motion for summary judgment, the plaintiffs "may not rest upon mere allegation or denials of [their] pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

I.   <u>Excessive Force</u>

The defendants argue that summary judgment is warranted on the plaintiff's excessive force claim against Irvin because Irvin's conduct was reasonable and thus did not violate Horan's constitutional rights, and because Irvin is entitled to qualified immunity for his conduct. The plaintiffs argue that genuine issues of material fact prevent the court from entering summary

5

judgment either on the merits of the plaintiffs' excessive force claim or on the basis of qualified immunity.

Claims that law enforcement officers have used deadly force to stop, arrest, or seize a free citizen implicate Fourth Amendment rights and are governed by the Fourth Amendment's standard of objective reasonableness. Graham v. Connor, 490 U.S. 386, 395 (1989); see also Roy v. Inhabitants of Lewiston, 42 F.3d 691, 694 (1st Cir. 1994). The reasonableness calculus must make allowance for "the need of police officers to make splitsecond judgments -- in circumstances that are tense, uncertain and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. at 695 (quotation marks omitted). The inquiry centers on the facts and circumstances confronting the officers, and not on their subjective intent or motivation. Graham, 490 U.S. at 397.[1]

Taking the facts in the light most favorable to the plaintiff, i.e., assuming that Irvin did not fire until after Horan had released the knife, the court finds that a reasonable

---

[1]The defendants contend that because the question of reasonableness requires inquiry into how a reasonable police officer in Irvin's position and with Irvin's knowledge would have reacted, Irvin's version of the events provides the only relevant framework for analyzing the reasonableness of his conduct. Memorandum In Support of Motion for Summary Judgment at 7. The argument is without merit. The competing versions of the shooting offered by the plaintiffs' witnesses are relevant to the factfinder's determination of what Irvin actually perceived.

6

jury could conclude that Irvin acted unreasonably under the circumstances. Once disarmed, Horan no longer could have posed a threat that would justify the use of deadly force. As such, the court cannot find that the conduct in which Irvin is alleged to have engaged was reasonable as a matter of law.

Nor is Irvin entitled to qualified immunity on the basis of the record currently before the court. A government official exercising discretionary authority is entitled to qualified immunity in respect to § 1983 claims only if his conduct does not violate "clearly established" statutory or constitutional rights. Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 228 (1st Cir. 1992) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To be "clearly established," the contours of the right must be sufficiently clear so that a reasonable official would understand what he is doing violates that right. St. Hiliare v. City of Laconia, 71 F.3d 20, 24 (1st Cir.) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)), petition for cert. filed, 64 U.S.L.W. 3709 (1996).

Again taking the facts in the light most favorable to the plaintiffs, see, e.g., Hegarty v. Somerset County, 53 F.3d 1367, 1376 (1st Cir.), cert. denied, 116 S. Ct. 675 (1995), the court finds that a reasonable police officer in Irvin's position would have been aware that shooting Horan after he discarded his weapon

7

would violate Horan's clearly established right to be free of excessive force. Although the question of the reasonableness of a seizure necessarily calls for a fact-intensive inquiry, Graham v. Connor, 490 U.S. at 396, the Supreme Court's Fourth Amendment rulings indicate that a police officer violates the Fourth Amendment when, in the company of two other officers who are able to provide assistance, he fires two shots at a citizen who already has discarded his weapon. E.g., Tennessee v. Garner 471 U.S. 1, 11 (1985) ("A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."); see also Graham, 409 U.S. at 396 (reasonableness determination requires determination of whether person to be seized poses an immediate threat to safety of officers or others, and whether he is resisting arrest or attempting to evade arrest by flight).

There being genuine issues of material fact concerning the events leading up to the shooting and the shooting itself, the defendant's motion for summary judgment on the plaintiff's excessive force claim is denied.

II. Supervisory Liability

The defendants seek summary judgment on the plaintiff's claims against Bieniarz on the ground that Bieniarz's statements do not support the inference that he was deliberately indifferent

8

to Horan's constitutional rights.  The plaintiffs contend that the "colorful" language Bieniarz used in his telephone conversation with Irvin and Bieniarz' instructions to send Hubbard to make contact with Horan "caused a greater likelihood that unwarranted police action, including excessive force, would be taken against Horan."  Defendants' Memorandum In Support of Objection to Motion for Summary Judgment at 23.

To establish supervisory liability for the unconstitutional acts of a subordinate, a plaintiff must show that the supervisor's conduct "amounted to a reckless or callous indifference to the constitutional rights of others" and must demonstrate "an 'affirmative link' between the street-level misconduct and the action, or inaction, of government officials." Gutierrez-Rodriquez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); Raineri v. Hillsborough County Dep't of Corrections, No. 93-118-JD, slip op. at 16 (D.N.H. Jan. 9, 1996).  Supervisory liability attaches "'only if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights,'" Hegarty, 53 F.3d at 1380 (quoting Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir. 1994)), and the supervisor's actions "led inexorably to the constitutional violation," id.

9

The court finds that neither the comments Bieniarz made during his conversation with Irvin nor the instructions he gave to Irvin support the inference that Bieniarz's conduct constituted deliberate indifference to Horan's rights or inexorably led to the shooting. Bieniarz supplemented his colorful descriptions of Horan with the facts upon which his descriptions were based, i.e., his personal knowledge that Horan had a history of violent behavior, mental problems, and alcoholism. Moreover, Bieniarz's assessment of Horan's dangerousness was confirmed when Horan emerged from his hotel unit holding a knife. As for Bieniarz's instructions to send Hubbard to contact Horan, the plan was reasonable under the circumstances and, in any event, never amounted to anything more than a knock on Horan's door. Accordingly, the court grants summary judgment on the plaintiffs' claims against Bieniarz based on supervisory liability.

III. Municipal Liability

The defendants argue that summary judgment is warranted on the plaintiffs' claim against the City of Laconia because the plaintiffs cannot establish the existence of a policy or custom of deliberate indifference in its hiring, training, supervision, or discipline of officers. They further claim that Irvin's

10

extensive training and experience belie the plaintiff's claim that Irvin's lack of training is causally linked to the shooting of Arthur Horan.

A municipality may be found liable under 42 U.S.C. § 1983 for a constitutional violation only if its policies or customs are the cause of the violation at issue. Monnell v. Department of Social Servs., 436 U.S. 658, 694-95 (1978). Flagrant deficiencies in the hiring, training, supervision, and discipline of police officers can constitute municipal policy, and thus serve as the basis for § 1983 liability, if those responsible for making policy for the police department are deliberately indifferent to these deficiencies. Bordanaro v. McLeod, 871 F.2d 1151 (1st Cir.), cert. denied, 493 U.S. 820 (1989); see also Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 16-17 (1st Cir. 1995) (single incident not sufficient to establish municipal custom or usage).

The plaintiffs have alleged that the municipal defendant has failed to take any remedial action to correct its police officers' use of excessive force on four separate occasions since 1990, including the incident precipitating this lawsuit, and have represented that they have not completed discovery on this issue.[2] In light of these averments, the defendants' motion for

_____

[2] Discovery is scheduled to close on November 1, 1996.

11

summary judgment is denied without prejudice to renew after the plaintiffs have had sufficient time to complete discovery on this issue.


## Conclusion

The defendants' motion for summary judgment (document no. 9) is granted on the plaintiff's supervisory liability claim against Bieniarz, and denied on the plaintiff's claims against Irvin and the City of Laconia.  The clerk shall schedule a status conference.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
Chief Judge

June 11, 1996

cc:  A. Gerard O'Neil, Esquire
     Wayne C. Beyer, Esquire

12