DaVias v. Kelly, et al.          CV-02-326-M    05/10/04
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Erico DaVias,
     Plaintiff

     v.                                    Civil No. 02-326-M
                                           Opinion No. 2004 DNH 082
Officer John Kelly, and
Officer Christopher Hamilton,
     Defendants


                         **O R D E R**

     Veteran pro se litigant, Erico DaVias,[1] brings this action

against the Somersworth Police Department and two of its police

officers, Officer John Kelly and Officer Christopher Hamilton.

By prior order, the court dismissed DaVias's claims against the

Somersworth Police Department and, pursuant to the Soldiers' and

Sailors' Civil Relief Act, stayed those against Officer Hamilton.


     As to defendant Officer John Kelly, DaVias claims that his

constitutional rights were violated when Kelly used excessive

force during the course of a traffic stop.  Kelly moves for

_____

     [1]    DaVias is a frequent pro se litigant in this court, who
has filed approximately 20 civil actions over the years.  In
those cases, he has proceeded under several variations of his
name including, for example, Eric Davis.

summary judgment, saying the record establishes that no material facts are in dispute and that he is entitled to judgment as a matter of law. DaVias has not filed a response to Kelly's dispositive motion. Nevertheless, that motion must be considered on its merits.

## Standard of Review

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

## Background

Kelly's affidavit, filed in support of his motion for summary judgment, establishes (without contradiction by plaintiff), that on the evening of July 27, 1999, he encountered a car driving with high-beam headlights. Officer Kelly twice signaled the driver to dim his lights, but got no response. Accordingly, he turned his cruiser around, followed the car, and pulled it over. DaVias was driving; a woman and a child were in the back seat. DaVias got out of the car and approached Kelly, shouting and accusing Kelly of racism for having pulled him over without cause. Kelly instructed DaVias to return to his vehicle, but he refused. Finally, Officer Kelly put his hand on his pepper spray canister and told DaVias to return to his car or he would be pepper-sprayed.

Eventually, DaVias returned to his car, but got into the back seat and refused to respond to Kelly's efforts to identify him. Kelly called for back-up. DaVias again got out of his car and approached the officer, screaming obscenities, waiving his hands in the area of Kelly's face, and behaving in a threatening manner. As DaVias closed in on Kelly, the officer raised his

hands, palms facing DaVias, and shoved him backward. DaVias quickly took one or two steps back, but did not fall to the ground or lose his balance. Kelly then drew the pepper spray canister and again warned DaVias that if he did not return to his car, he would be sprayed. DaVias retreated, yelling obscenities and shouting to his female passenger that he had been assaulted. But, instead of getting back into his car, DaVias left the scene, walking down the roadway and leaving his passengers behind.

Parenthetically, the court notes that Officer Kelly's account of the events in question is confirmed by the video tape of the traffic stop, made from Kelly's patrol car. That tape puts the lie to DaVias's claim that Kelly "rush[ed] up to the plaintiff taking his closed fist [and] hitting plaintiff on the right side of [his] eyebrow and forehead, then shoving plaintiff, pushing him onto the street." Amended complaint (document no. 9) at para. 3. Regardless of whether DaVias has imperfect recall of the events in question or has purposefully fabricated them to support his excessive force claims, the video tape reveals that the factual allegations set forth in his complaint are, to say the least, inaccurate.

4

Shortly after leaving the scene of the traffic stop, DaVias was taken into custody by defendant Officer Christopher Hamilton. He was charged with operating a motor vehicle without a license and eventually pled guilty to that charge. DaVias subsequently filed this action, claiming to have been the victim of excessive force. See generally 42 U.S.C. § 1983.

## Discussion

The United States Supreme Court has made clear that "all claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis in original).

The Fourth Amendment to the Constitution guarantees the right of individuals to be free from "unreasonable searches and seizures." Not surprisingly, then, a police officer violates the Fourth Amendment when he or she uses force that is not "reasonable," given all the attendant circumstances.

5

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case.

Graham, 490 U.S. at 396 (citations and internal quotation marks omitted). It is also important to note that the determination of whether an officer's conduct was "reasonable" is an objective one. Consequently, the individual officer's subjective intent and motivation are not relevant. Id. at 397 ("[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."). See also Jarrett v. Town of Yarmouth, 331 F.3d 140, 148 (1st Cir.) ("[O]bjective reasonableness is the touchstone of the excessive force inquiry."), cert. denied, 124 S.Ct. 573 (2003).

While the term "reasonable" is a familiar one, used often in the context of negligence claims, the court of appeals for this circuit has noted that it has a more "generous" meaning in the context of excessive force claims.

> [T]he Supreme Court's standard of reasonableness is comparatively generous to the police in cases where potential danger, emergency conditions or other exigent circumstances are present. In Graham v. Connor, the Court said that the "calculus of reasonableness" must make "allowance" for the need of police officers "to make splitsecond judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation."

Roy v. Inhabitants of Lewiston, 42 F.3d 691, 695 (1st Cir. 1994). The court concluded that, "the Supreme Court intends to surround the police who make these on-the-spot choices in dangerous situations with a fairly wide zone of protection in close cases." Id. See also Graham, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the

7

Fourth Amendment.") (citation and internal quotation marks omitted).

In determining whether an officer's conduct was objectively reasonable under the circumstances, the court (or trier of fact, as the case may be) must consider, among other things, the following factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. See also Alexis v. McDonald's Rest. of Mass., Inc., 67 F.3d 341, 352-53 (1st Cir. 1995). As the Court of Appeals for the Ninth Circuit has observed, "[t]he force which was applied must be balanced against the need for that force: it is the need for force which is at the heart of the consideration of the Graham factors." Alexander v. City & County of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994).

In this case, DaVias exited his car (for a second time) and advanced toward Officer Kelly in a threatening manner, shouting obscenities. When he came within striking distance of Kelly and

refused to comply with the officer's directive to stop, the officer acted in an objectively reasonable manner when he raised his hands and shoved DaVias back. The evidence of record unquestionably demonstrates that DaVias was agitated and posed a potential physical threat to Kelly. Under those circumstances, the decision to push DaVias back was certainly reasonable, particularly since decisions of that sort must be made in the context of rapidly evolving circumstances in which an officer might reasonably be concerned for his or her own safety.

The uncontested evidence demonstrates that Kelly used no more force than was objectively reasonably necessary to stop DaVias from continuing his menacing advance: a simple shove, which did not cause DaVias to fall to the ground or even lose his balance. DaVias retreated and, although he left the scene, Kelly did not pursue him, nor did he attempt to subdue or apprehend him (though he certainly could have done so). On these facts, no reasonable and properly instructed jury could conclude that the force Kelly employed was excessive in any constitutional sense. Consequently, the court holds that, as a matter of law, when Officer Kelly shoved DaVias back to stop his agitated and

9

threatening advance, he did not use constitutionally excessive force.  Instead, he behaved in an appropriate and objectively reasonable manner under the circumstances.

## Conclusion

Officer Kelly is entitled to judgment as a matter of law and his motion for summary judgment (document no. 28) is granted, as is his motion to supplement the record (document no. 33).

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 10, 2004

cc:  Erico DaVias
     John A. Curran, Esq.

10