Filed 5/11/16  P. v. Jimenez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MARTIN JIMENEZ, <br><br> Defendant and Appellant. | D068407 <br><br><br> (Super. Ct. No. SCD256352) |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Affirmed.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Martin Jimenez was convicted by a jury of one count of resisting an executive officer with force or violence (Pen. Code, § 69)[1] (count 4), along with numerous other offenses, after he stole a car and subsequently led officers on a chase that ended only after he crashed the vehicle and officers subdued him. After the jury returned its verdicts, Jimenez sought dismissal of count 4 under section 1385, arguing there was insufficient evidence that he used impermissible force or violence when he resisted the officers, and also moved to reduce count 4 to a misdemeanor under section 17, subdivision (b). The court granted the request to reduce count 4 to a misdemeanor, and otherwise denied Jimenez's motion.

On appeal, Jimenez argues the court erred when it denied his motion to dismiss count 4 for insufficient evidence. He alternatively argues the court should have substituted a conviction under section 148 as a "lesser included offense" of section 69 because there was insufficient evidence Jimenez used the requisite force or violence necessary for committing the section 69 offense.

I

FACTS

A. Prosecution Case

On May 29, 2014, Officer Ruiz was driving a marked police vehicle when he spotted Jimenez driving a car that had been stolen from the victim earlier that day. Ruiz activated his lights and sirens to accomplish a stop, but Jimenez sped away, running

---

[1]     All further statutory references are to the Penal Code.

2

several red lights during the pursuit. He finally stopped after police deployed "spike strips" and Jimenez crashed on the side of the freeway.

Ruiz's car was stopped three to four feet from Jimenez's car. Ruiz got out of his car with his weapon drawn and trained on the car, and yelled at Jimenez between eight to 10 times to get out of the car with his hands up. Jimenez opened his door, but did not get out, and instead stayed in the car yelling at the officers. He also reached toward the passenger seat of the car as though to grab something. Officer Whann, believing Jimenez was reaching for a weapon, deployed a K-9 to subdue Jimenez.[2] The dog bit Jimenez in the arm and then released him, and Jimenez kicked at the dog and tried to climb toward the passenger seat. Whann, having seen Jimenez previously reaching toward the passenger seat and seeing him again trying to get to that area, gave the "bite" command again and the dog then bit Jimenez in the leg and held on. Jimenez continued to flail his arms, so Whann approached him and punched him in the face two or three times to stop his flailing arms. Several officers pulled Jimenez from the car and tried to control him, and Whann ordered the dog to release Jimenez and extricated the dog from the melee. However, Jimenez did not submit, but instead continued swinging his arms, striking Ruiz in the chest, shoulders and arm, and also kicking at the officers. Officer Eckard applied pepper spray, but Jimenez continued struggling against the officers. Officer Wallace also punched Jimenez, trying to subdue him, but as Jimenez resisted, his fingernail cut the

---

[2] Before giving the bite command, Whann had shouted at Jimenez to show his hands and get out of the vehicle, and had warned there was a police dog and that Jimenez would be bitten.

inside of Wallace's wrist. Wallace finally used a carotid restraint and, while Jimenez was momentarily unconscious, officers were able to place cuffs on him. Inside the stolen car, officers found two knives on the passenger side floor that were not the property of the owner of the car.

B. Defense

Jimenez did not testify. The defense called a person who was involved in a 2011 altercation with Ruiz and Whann in which the officers employed allegedly excessive force, and another person involved in a 2013 altercation with Ruiz in which Ruiz employed force.

II

ANALYSIS

A. Procedural Background

The jury was instructed on the elements of the section 69 offense alleged in count 4, and on the elements of the lesser included offense of section 148. (Cf. *People v. Smith* (2013) 57 Cal.4th 232, 243-245.) The instructions explained both offenses required that, at the time Jimenez resisted, the officer was lawfully performing or attempting to perform his duties. The jury was also instructed that an officer is not "lawfully performing" his or her duties when he or she employs excessive force to make an otherwise lawful arrest or detention, and explained the special rules controlling the use of force.[3]

_____

[3] The court gave an instruction, patterned on CALCRIM No. 2670, which instructed the jury in part that, "A peace officer may use reasonable force to arrest or detain someone, to prevent escape, to overcome resistance, or in self[-]defense. [¶] If a person

4

After the jury returned its guilty verdict on the section 69 offense, Jimenez moved under section 1385 to dismiss count 4 for insufficient evidence and in the furtherance of justice, and also moved to reduce count 4 to a misdemeanor under section 17, subdivision (b).  The court granted the request to reduce count 4 to a misdemeanor, and otherwise denied Jimenez's motion.

B.  Legal Standards

Jimenez's principal challenge on appeal asserts the trial court's ruling on his section 1385 motion was reversible error because the evidence was insufficient to show his resistance did not constitute permissible self-defense in reaction to the officers' use of excessive force.  We therefore must examine the substantive standards concerning the law of excessive force by a peace officer and the standards for our review of a ruling denying a motion to dismiss under section 1385.

*Section 69 and the Role of Excessive Force*

A defendant is guilty of violating section 69 when he or she resists the officer by the use of force or violence as long as that officer was acting lawfully at the time of the offense.  (*People v. Smith, supra,* 57 Cal.4th at p. 241.)  However, an essential element of that offense is that the officer at the time of the arrest must be engaged in the lawful

knows, or reasonably should know, that a peace officer is arresting or detaining him or her, the person must not use force or any weapon to resist an officer's use of reasonable force.  [¶]  If a peace officer uses unreasonable or excessive force while arresting or attempting to arrest a person, that person may lawfully use reasonable force to defend himself or herself.  [¶]  A person being arrested uses reasonable force when he or she: (1) uses that degree of force that he or she actually believes is reasonably necessary to protect himself or herself from the officer's use of unreasonable or excessive force; and (2) uses no more force than a reasonable person in the same situation would believe is necessary for his or her protection."

5

performance of his or her duties, and use of excessive force by an officer to accomplish an arrest is unlawful. (*People v. White* (1980) 101 Cal.App.3d 161, 167.) Thus, where an arrest is made with excessive force, the arrest is unlawful and the defendant is not guilty of those crimes that by definition require the officer to be lawfully engaged in the performance of his or her duties. (*People v. Olguin* (1981) 119 Cal.App.3d 39, 45.) Stated differently, when a peace officer uses unreasonable or excessive force in making the arrest or the detention, the person being arrested does not violate the law if he or she uses reasonable force to defend him- or herself against the use of excessive force. (*People v. Sons* (2008) 164 Cal.App.4th 90, 102-103.)

As the court in *Martinez v. County of Los Angeles* (1996) 47 Cal.App.4th 334 (*Martinez*) explained at pages 343 to 344:

> "Such excessive force claims are analyzed under the Fourth Amendment and its 'reasonableness' standard and the proper inquiry focuses upon whether the deputies acted reasonably . . . . [Citation.] The test of reasonableness in this context is an objective one, viewed from the vantage of a reasonable officer on the scene. It is also highly deferential to the police officer's need to protect himself and others: 'The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. [Citation.] . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. [¶] [T]he "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. [Citations.]' [Quoting *Graham v. Connor* (1989) 490 U.S. 386, 396-397.] [¶] ' . . . Thus, under *Graham,* we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never

6

allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes "reasonable" action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.' (*Smith v. Freland* (6th Cir. 1992) 954 F.2d 343, 347.) [¶] The Supreme Court's definition of reasonableness is therefore 'comparatively generous to the police in cases where potential danger, emergency conditions or other exigent circumstances are present.' (*Roy v. Inhabitants of City of Lewiston* (1st Cir. 1994) 42 F.3d 691, 695 . . . .) In effect, 'the Supreme Court intends to surround the police who make these on-the-spot choices in dangerous situations with a fairly wide zone of protection in close cases. . . .' (*Ibid.*)"

*Standards Governing Motion to Dismiss Under Section 1385*

Section 1385 permits a trial court, either on its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, to order an action to be dismissed. (*People v. Hatch* (2000) 22 Cal.4th 260, 268.) "[T]rial courts historically have had the power to acquit for legal insufficiency of the evidence pursuant to section 1385." (*Ibid.*) To justify an order of dismissal under section 1385 for legal insufficiency of the evidence to support the conviction, "the record must show that the court viewed the evidence in the light most favorable to the prosecution and concluded that no reasonable trier of fact could find guilt beyond a reasonable doubt." (*Hatch,* at p. 273.)

When assessing a claim of insufficiency of evidence, whether as part of a motion seeking dismissal under section 1385 based on insufficiency of the evidence (*People v. Hatch, supra,* 22 Cal.4th at pp. 272-273) or on appeal to this court (*People v. Iboa* (2012) 207 Cal.App.4th 111, 117), the court must "review 'the whole record in the light most favorable to the judgment' and decide 'whether it discloses substantial evidence . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'

7

[Quoting *People v. Johnson* (1980) 26 Cal.3d 557, 578.]  Under this standard, the court does not ' "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  [Citation.]  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'  [Quoting *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.]"  (*Hatch,* at p. 273.)

    C. <u>The Trial Court Did Not Err in Denying Jimenez's Section 1385 Motion</u>

We conclude the trial court correctly denied Jimenez's section 1385 motion because there was evidence, viewed most favorably to the prosecution, from which a rational trier of fact could have found the officers used reasonable force to arrest or detain Jimenez, to overcome his resistance, and in self-defense.  Jimenez does not dispute there was ample cause for police to initiate the traffic stop, and it is undisputed he did not yield but instead attempted to escape, which led to a chase that ended only when the car Jimenez was driving was disabled by the crash.  Moreover, there was ample evidence to support the conclusion police did not employ physical force until after they first used repeated verbal demands, attempting to get Jimenez to get out of the car with his hands up, which he disregarded.  Moreover, police did not initiate the use of physical force until after Jimenez opened his door, continued yelling at police rather than yielding, and began to reach toward the passenger seat of the car as though to grab something, which led Whann to believe it could have been a weapon.  Finally, even after police used the police dog in an attempt to overcome Jimenez's resistance and as a self-defense measure, he

8

continued to resist so vigorously that it required several officers, and ultimately the use of a carotid choke hold, to finally overcome his resistance.

This evidence would permit a rational trier of fact to conclude that, "viewed from the vantage of a reasonable officer on the scene [and being] highly deferential to the police officer's need to protect himself and others" (*Martinez, supra,* 47 Cal.App.4th at p. 343), the initial deployment of the police dog was not an unreasonable level of force "judged from the perspective of a reasonable officer on the scene." (*Ibid.*) Moreover, because Jimenez knew, or reasonably should have known, that he was being arrested, he was not permitted to use force to resist the use of reasonable force to subdue him, but nevertheless continued his struggles, striking police with his feet and hands until he was ultimately disabled.

Jimenez argues there was no substantial evidence that police employed reasonable force to overcome his resistance because there was no evidence from which a jury could have concluded he resisted the verbal commands to surrender. He asserts that, because the commands were in English and he is a Spanish speaker, and there was ambient noise from the sirens that could have obscured the commands, there was no evidence he could hear or understand the commands to show his hands and get out of the car or the warning the police dog would be deployed if he did not surrender. However, there was no evidence Jimenez did *not* understand English and did *not* hear the commands. Moreover, a jury could find that a reasonable person, whose escape attempt in a stolen car has ended in a crash and is surrounded by police who are yelling at him with weapons drawn, would understand that police are demanding his surrender. Most importantly, "[t]he test of

9

reasonableness in this context is an objective one, viewed from the vantage of a reasonable officer on the scene" and not with the benefit of " 'the 20/20 vision of hindsight.' " (*Martinez, supra,* 47 Cal.App.4th 334 at pp. 343-344.) A reasonable officer could have perceived Jimenez heard and understood the commands and was electing to reach for a weapon rather than submitting.

We conclude there is ample evidence from which a rational trier of fact could have concluded the initial deployment of the dog, and the subsequent efforts to overcome Jimenez's continued resistance to being subdued, represented the use of reasonable force to arrest him, to overcome his resistance, and to act in self-defense. Accordingly, Jimenez's request for dismissal under section 1385, based on the purported lack of any evidence to support the verdict, was not error.

D. The Remaining Claim

Jimenez argues that, because there was no evidence he used force to resist the officers, the appellate court should find him guilty of the lesser included offense of resisting a peace officer under section 148 rather than of resisting an executive officer in violation of section 69, and claims "the trial court erred for not finding so." First, Jimenez did not seek reduction of the charges below, which waives the issue. (*People v. Carmony* (2004) 33 Cal.4th 367, 375-376 [stating in dicta that failure on the part of a defendant to invite the court to exercise its power to dismiss under section 1385 waives or forfeits right to raise issue on appeal].) More importantly, there was ample evidence Jimenez employed force to resist the officers: he kicked at the dog, and swung and kicked at officers when they tried to subdue him. We may not disregard the jury's verdict in

10

order to find he committed the lesser offense, which is distinguishable only insofar as a defendant does not employ force when resisting the peace officer, because there was ample evidence supporting the conclusion Jimenez *did* employ force to resist the officers, and therefore his conviction of the greater offense is supported by substantial evidence.

## DISPOSITION

The judgment is affirmed.

McDONALD, J.

WE CONCUR:

HALLER, Acting P. J.

AARON, J.

11