Angel Luis **SANCHEZ**, Plaintiff

v.

Miguel A. **PEREIRA–CASTILLO**, et al., Defendant(s).

Civil No. 07–1618 (JAG).

United States District Court, D. Puerto Rico.

March 19, 2008.

Opinion Denying Reconsideration April 18, 2008.

Guillermo J. Ramos–Luina, San Juan, PR, for Plaintiff.

Jose J. Gueits–Ortiz, Department of Justice of Puerto Rico, Julio Nigaglioni–Arrache, Lopez Mulero, Colon Rodriguez & Nigaglioni Law Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is Defendants' Miguel A. Pereira–Castillo ("Pereira"), Hector Fontanez–Rivera ("Fontanez"), Ramon Diaz–Correa ("Diaz"), Gilberto Negron–Falcon ("Negron"), Walter Soto–Hernandez ("Soto"), Miguel Caban–Rosados ("Caban") (collectively "Defendants") and Sandra I. Deniz Rocafort's ("Deniz") Motions to Dismiss. (Docket Nos. 20, 24). For the reasons set forth below, the Court **GRANTS** Defendants' and Deniz's Motions.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 10, 2007, Plaintiff Angel Luis Sanchez ("Plaintiff"), an inmate under the custody of the Commonwealth of Puerto Rico Administration of Corrections ("AOC"), filed the present complaint. Plaintiff states that on July 13, 2006, several correction officers conducted a search of the living quarters at the correctional facility where he is serving his sentence. On that date, the officers also searched the bodies of the inmates including Plaintiff.

Plaintiff states that while wearing only his underwear, several correction officers, scanned his body with a handheld metal detector. The handheld metal detectors made a positive finding and, as a result, Plaintiff was taken to an area where he was sniffed by a K–9 dog and subsequently strip searched. Plaintiff was then subject to a second search by the correction officers using a hand held metal detector. None of the aforementioned searches resulted in a positive finding.

Nonetheless, Plaintiff was taken to a correctional facility where, in order to rule out the possibility of contraband, x-rays of his abdominal area were taken. Plaintiff objected to the taking of the x-rays, but a corrections officer told him that there was a judicial order for such a procedure. Plaintiff requested to see the alleged order but the corrections officer declined to show it.

After the x-rays were taken, a corrections officer ordered Plaintiff to force himself to have a bowel movement on the floor. This did not produce any foreign object. The Medical Director for the correctional facility where Plaintiff was housed examined the x-rays and informed Plaintiff that they reflected the existence of a foreign object within his rectum that was consistent with a cellular telephone. Plaintiff denied that he had any foreign objects inside himself and requested that another x-ray be performed. No other x-ray tests were performed.

Afterwards, Plaintiff was referred to the Emergency Room of the Rio Piedras Medical Center ("Medical Center"). Doctors at the Medical Center performed two rectal exams, which did not produce any foreign objects. Nonetheless, personnel from the correctional facility insisted that Plaintiff had a foreign object.

Deniz, a doctor at the Medical Center, scheduled Plaintiff for an emergency surgery. No x-rays were taken by Deniz prior to the surgery. On July 14, 2006, Deniz performed an exploratory surgical procedure on Plaintiff's abdomen. Prior to the surgery, Deniz obtained Plaintiff's written consent. As part of the procedure, a post-surgical x-ray film was taken. Both the surgical procedure and the film revealed that Plaintiff did not have a cellular phone or other foreign object within his body. On July 16, 2006, Plaintiff was discharged from the hospital and returned to his cell.

On July 18, 2006, Plaintiff filed an administrative complaint with the AOC. The AOC never addressed Plaintiff's administrative complaint. Consequently, on July 10, 2007, Plaintiff filed the present complaint.

Plaintiff requests money damages under the Civil Rights Act, 42 U.S.C. § 1983, the Fourth, Fifth, Eighth, and Fourteenth Amendment of the Constitution of the United States, the Constitution of the Commonwealth of Puerto Rico and under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141. Additionally, Plaintiff has a medical battery and medical malpractice claim. Plaintiff avers that the surgery, the rectal exams and the x-ray exams that were performed on him were invasive, mutilated his body, desecrated his body integrity, jeopardized his life and health, and subjected him to severe physical and emotional pain that continues to this day. Plaintiff contends that several named defendants among them the abovementioned co-defendants are jointly and severally liable for these violations.

On and before July 13, 2006, Pereira was the Secretary of Corrections and Rehabilitation of the Commonwealth of Puerto Rico and Fontanez was the Auxiliary Administrator of Security and/or the Director of Security at the Central Office of the Administration of Corrections. Diaz was the Director of the Eastern Region for the AOC and Negron was the Security Director for that region. Soto was the warden of the institute where Plaintiff was housed. Plaintiff contends that Pereira, Fontanez, Diaz, Negron, and Soto failed to adequately train the staff at the correction facility, whose actions deprived Plaintiff of his constitutional rights and caused him damages. Furthermore, Plaintiff alleges that Pereira, Fontanez, Diaz, Negron, and Soto failed to ensure that the correctional officers under their command followed practices and procedures, which would protect his constitutional rights and preserve his bodily integrity. According to Plaintiff, Pereira, Fontanez, Diaz, Negron, and Soto's omissions caused him harm.

Caban was in charge of conducting the search of the living quarters at the correctional facility where Plaintiff was housed. Caban was also one of the correctional officers that ordered Plaintiff to be transported to the facility where the x-rays were taken. Furthermore, Caban was the corrections officer that asserted that there was a judicial order that allowed the taking of the x-rays. Additionally, Caban refused to show the alleged judicial order to Plaintiff before the x-rays were taken. Caban also ordered Plaintiff to force himself to have a bowl movement. According to Plaintiff, Caban may have also been responsible together with other police officers of coordinating the transportation of Plaintiff to the Medical Center; and of ordering other correctional officers to push the doctors at the Medical Center to perform the abdominal surgery on Plaintiff. (Docket No. 1).

On October 22, 2007, Defendants filed a Motion to Dismiss. Defendants contend that Plaintiff's Section 1983 and state law damage claim against them should be dismissed because they are barred by the Eleventh Amendment. Furthermore, Defendants allege that the present complaint should be dismissed for failure to state a claim under Section 1983 upon which relief can be granted. Moreover, Defendants aver that the case at bar should be dismissed because they are each entitled to qualified immunity. Additionally, Defendants assert that Plaintiff's Fifth Amendment claim must be dismissed because there are no federal government employees involved in the case at bar. Defendants also allege that the claims against Pereira, Fontanez, Diaz, Negron, and Soto should be dismissed because the doctrine of *respondeat superior* liability is inapplicable to them. Finally, Defendants request that all supplemental claims be dismissed. (Docket No. 20). On November 30, 2007, Plaintiff opposed all of Defendants' Motion to Dismiss. (Docket No. 23).

On January 22, 2008, Deniz also filed a Motion to Dismiss. Deniz contends that she is entitled to Eleventh Amendment Immunity in her official capacity and to qualified immunity in her personal capacity. (Docket No. 24). Plaintiff did not oppose Deniz's motion.

## STANDARD OF REVIEW

### A. *Motion to Dismiss Standard*

■ In *Bell Atl. Corp. v. Twombly,* — U.S. ——, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court recently held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Rodriguez-Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 95–96 (1st Cir.2007)(quoting *Twombly,* 127 S.Ct. at 1967). While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to "nudge [plaintiffs'] claims across the line from conceivable to plausible." *Twombly,* 127 S.Ct. at 1974. Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 1965.

The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa-Martinez v. Arrillaga-Belendez,* 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.,* 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.* at 23 (*quoting*

*Correa-Martinez,* 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988).

### Discussion

This Court will address all of the allegations proffered by Defendants and Deniz in their Motions to Dismiss. First, the Court will address Defendants and Deniz's allegation that the Eleventh Amendment bars Plaintiff's claims against them.

### 1. *Eleventh Amendment*

Defendants and Deniz stress that they are officials of the Commonwealth of Puerto Rico and that the Eleventh Amendment bars suits against agents of the Commonwealth of Puerto Rico. Defendants also aver that they acted under color of law and, as such, the Eleventh Amendment immunity applies to them.

■ The Eleventh Amendment "prohibit [s federal courts] from hearing most suits brought against a state by citizens of that or any other state." *Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth.,* 991 F.2d 935, 938 (1st Cir.1993). "[D]espite the absence of any express reference," the Eleventh Amendment "pertains to Puerto Rico in the same manner, and to the same extent, as if Puerto Rico were a State." *De Leon Lopez v. Corporacion Insular de Seguros,* 931 F.2d 116, 121 (1st Cir.1991).

■ "[T]he government enjoys broad protection through the operation of the sovereign immunity doctrine." *Muirhead v. Mecham,* 427 F.3d 14, 18 (1st Cir.2005). Often, a suit against a state official is considered a suit against the state, which triggers Eleventh Amendment immunity. *Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v.*

*Flores Galarza,* 484 F.3d 1, 24 (1st Cir. 2007). Consequently, when as here, Plaintiff brings a suit against several Puerto Rico state officials in their personal capacity rather than against the Commonwealth of Puerto Rico itself, the Court must ascertain whether the suit in reality is a suit against the Commonwealth of Puerto Rico. *Muirhead v. Mecham,* 427 F.3d 14, 18 (1st Cir.2005).

■■ This analysis examines the conduct challenged and the relief sought. *Id.* When the actions of an officer do not conflict with the terms of his valid statutory authority, they are considered actions of the sovereign, which are protected by the Eleventh Amendment.[1] *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 695, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Furthermore, when the relief sought "would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act" the suit will be considered one against the sovereign. *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (citations omitted).

■ The Eleventh Amendment does not apply in a suit against an officer to recover damages for the agent's personal actions, because the judgment sought will not require action by the sovereign or disturb the sovereign's property. *Larson,* 337 U.S. at 687, 69 S.Ct. 1457.[2] Thus, the sovereign immunity doctrine does not bar personal-capacity suits against state officials because "it is clear that a suit against a government official in his or her personal capacity cannot lead to imposition of fee

liability upon the governmental entity." *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

■ "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Id.* at 165, 105 S.Ct. 3099. "[T]o establish personal liability in a section 1983 action it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166, 105 S.Ct. 3099. In the present case, Plaintiff's damage claims are brought against Defendants and Deniz in their individual and personal capacity. Specifically, Plaintiff claims that Defendants, while acting under color of law, deprived him of his constitutional rights. Furthermore, as will be discussed later on, Plaintiff can only proffer claims against Deniz for her actions as a doctor because she was not an official acting under color of law when the July, 2006 events transpired. Therefore, since the case at bar is a personal-capacity suit, the sovereign immunity doctrine is inapplicable.

### 2. *Fifth Amendment Claim*

Defendants also contend that Plaintiff's Fifth Amendment claims against them should be dismissed. According to Defendants, the Due Process Clause of the Fifth Amendment is inapplicable to them because they are employees of the Commonwealth of Puerto Rico. This Court agrees.

■ The due process clause of the Fifth Amendment states in pertinent part that: "No person shall ... be deprived of life, liberty, or property, without due process of law ..." U.S. Const. amend. V.

---

1. The doctrine of sovereign immunity does not apply when an officer's power is limited by statute and his actions go beyond those limitations. *Id.* at 689; *see also Muirhead,* 427 F.3d at 19.

2. "If the officer purports to act as an individual and not as an official, a suit directed against that action is not a suit against the sovereign." *Larson,* 337 U.S. at 689, 69 S.Ct. 1457.

The Fifth Amendment applies only to actions of the federal government not those of private individuals, nor of state governments. *Public Utilities Commission v. Pollak*, 343 U.S. 451, 461, 72 S.Ct. 813, 96 L.Ed. 1068 (1952); *see also Gerena v. Puerto Rico Legal Services, Inc.*, 697 F.2d 447, 448 (1st Cir.1983).

In the case at bar, only state officials and a doctor are named defendants. Furthermore, Defendants and Deniz are being sued in their personal and individual capacity. Thus, there is no federal government action. As such, the Fifth Amendment is inapplicable to the case at bar. Therefore, Plaintiff's Fifth Amendment claims shall be dismissed.

### 3. *Section 1983 Claim*

The Court will now discuss whether the present complaint should be dismissed because Plaintiff has failed to state a claim under Section 1983 upon which relief can be granted. Defendants Pereira, Fontanez, Diaz, Negron, and Soto contend that the 1983 claim against them should be dismissed because the complaint "does not even mention a single action taken by defendants" which meets the requirements of an adequate section 1983 claim. Furthermore, Defendant Caban alleges that he acted according to law and, therefore, the Section 1983 claim against him should be dismissed. Deniz also claims that she did not violate Plaintiff's constitutional rights.

As mentioned previously, "to establish personal liability in a section 1983 action it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky*, 473 U.S. at 166, 105 S.Ct. 3099. Personal liability under section 1983 exists only for constitutional violations and not for mere negligence. *Acosta v. United States Marshals Serv.*, 445 F.3d 509, 514 (1st Cir. 2006).

Plaintiff alleges that his Fourth, Eighth, and Fourteenth Amendment rights were violated by Defendants Pereira, Fontanez, Diaz, Negron, Soto, and Caban. Essentially, Plaintiff contends that the x-ray picture taken, and the strip searches performed at the prison facility together with the rectal and exploratory surgery performed by the medical staff at the Medical Center violated his constitutional rights. Taking Plaintiff's pleaded factual allegations as true, and drawing all reasonable inferences in plaintiff's favor, leads this Court to the conclusion that the Fourth Amendment is certainly implicated here.

"[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Prisoners have some Fourth Amendment protection from unreasonable searches of their persons. *Cookish v. Powell*, 945 F.2d 441, 446 (1st Cir.1991). Our Circuit has recognized that strip searches[3] are "severe if not gross interference with a person's privacy." *Arruda v. Fair*, 710 F.2d 886, 887 (1st Cir.1983). The Fourth Amendment allows strip searches that are reasonable.

The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search

---

**3.** Our Circuit has described the levels of nude body searches:

A "strip search," though an umbrella term, generally refers to an inspection of a naked individual, without any scrutiny of the subject's body cavities. A "visual body cavity search" extends to visual inspection of the anal and genital areas. A "manual body cavity search" includes some degree of touching or probing of body cavities. *Blackburn v. Snow*, 771 F.2d 556, 561 n. 3 (1st Cir.1985).

against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Cookish*, 945 F.2d at 446 (citing *Bonitz v. Fair*, 804 F.2d 164, 172 (1st Cir.1986)). An inmate's Fourth Amendment rights are not violated when a strip search is conducted with the purpose of avoiding the entry of contraband into the prison system. *See Bell v. Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). A strip search in such circumstances is reasonable. *See id.* at 545–46.[4]

 X-ray searches on inmates are also subject to the aforementioned test of reasonableness. *See, e.g., United States v. Oyekan*, 786 F.2d 832, 837 (8th Cir.1986). A reasonable suspicion that an inmate is secreting contraband supports an involuntary x-ray search. *See id.* at 837; *see also United States v. Vega–Barvo*, 729 F.2d 1341, 1344–49 (11th Cir.1984); *Cameron v. Hendricks*, 942 F.Supp. 499, 502–503 (D.Kan.1996); *Larkins v. Bartlett*, 1990 WL 1488, 1990 U.S. Dist. LEXIS 79 (S.D.N.Y.1990)(The Court held that an x-ray of an inmate did not violate his Eighth Amendment right against cruel and unusual punishment or his Fourth Amendment privacy rights because the State had a legitimate interest in preventing the introduction of contraband into the prison.).

 The Fourth Amendment also protects against compelled surgical intrusions. *Winston v. Lee*, 470 U.S. 753, 759, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985). Surgical intrusions on inmates must be reasonable. *Id.* at 160, 105 S.Ct. 3099.

"The reasonableness of surgical intrusions beneath the skin depends on a case-by-case approach, in which the individual's interests in privacy and security are weighed against society's interests in conducting the procedure." *Id.* The Supreme Court held in *Winston* that "a compelled surgical intrusion into an individual's body for evidence [ ] implicates expectations of privacy and security of such magnitude that the intrusion may be 'unreasonable' even if likely to produce evidence of a crime." *Id.* Furthermore, the Court stressed that one of the most important factors in the "reasonableness" analysis is the magnitude of the intrusion, which is measured by the extent to which the procedure may threaten the safety or health of the individual." *Id.* at 761, 105 S.Ct. 1611 (citing *Schmerber v. California*, 384 U.S. 757, 771, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). In addition, search warrants are ordinarily required to perform a surgical intrusion on an inmate. *Id.* 761(citing *Schmerber*, 384 U.S. at 770, 86 S.Ct. 1826.).

 Plaintiff also contends that his Fourteenth and Eighth Amendment rights were violated. An Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" that is "totally without penological justification." *Hope v. Pelzer*, 536 U.S. 730, 737, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citations omitted). Only "calculated harassment" or "maliciously motivated" conduct that is unrelated to institutional security is considered unconstitutional. *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir.2004). Preventing drugs and weapons that can be smuggled through the alimen-

---

4. The Fourth Amendment mandates that body cavity searches such as rectal exams must also be reasonable. *Cookish*, 945 F.2d at 446(citing *Bonitz v. Fair*, 804 F.2d 164, 172 (1st Cir.1986)). An anal cavity search is reasonable if it was done to avoid the entry of contraband into the AOC's prison system. *Arruda v. Fair*, 710 F.2d 886, 888 (1st Cir.1983); *Dudley v. Duckworth*, 1991 WL 252690, 1991 U.S.App. LEXIS 28627 (7th Cir.1991); *Cameron v. Hendricks*, 942 F.Supp. 499, 504 (D.Kan.1996).

tary canal or hidden in the rectal cavity is a legitimate penological concern. *Bell*, 441 U.S. at 559, 99 S.Ct. 1861. As mentioned previously, rectal exams, x-rays and strip searches are a legitimate means of maintaining order.[5] Such searches do not violate the Eighth Amendment as long as they are conducted in a reasonable manner. However, if such searches are done "maliciously and sadistically for the very purpose of causing harm," they violate the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

 The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law ..." U.S. Const. amend. XIV § 1. The Fourteenth Amendment prohibits AOC officials from "treating prisoners in a fashion so 'brutal' and 'offensive to human dignity' as to 'shock the conscience.'" *Vaughan v. Ricketts*, 859 F.2d 736, 742 (9th Cir.1988)(citing *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). "Conduct that amounts to brutality violates a liberty interest protected by the Fourteenth Amendment's due process clause, the right to be secure in one's person." *Id.*

 In order for Plaintiff to proffer an adequate Fourth Amendment claim, he must demonstrate that the acts of the AOC correctional officers were "maliciously and sadistically applied for the purpose of causing harm." *Id.* If correctional officers have a reasonable suspicion that an inmate is secreting contraband, the Four-

teenth Amendment does not prohibit that an inmate be searched in any of the above mentioned manners. *See Poe v. Leonard*, 282 F.3d 123, 138 (2d Cir.2002); *Dockery v. Bass*, 1997 WL 800793, 1997 U.S.App. LEXIS 35693 (9th Cir.1997).

The Court must address whether the x-rays and the strip searches conducted by the AOC's personnel violated Plaintiff's constitutional rights. Furthermore, we must analyze if the rectal exams and the surgery performed by the staff at the Medical Center violated Plaintiff's federal rights and, if so, whether said violations can be attributed to the AOC's personnel. We will start with the x-rays and strip searches performed on Plaintiff.

 The strip searches and x-rays performed on Plaintiff were done in order to avoid the entry of contraband into the AOC's prison system. Both the strip searches and x-rays were done by AOC officials inside the prison. Furthermore, the searches were not done in a sadistic and malicious fashion with the purpose of causing harm. In *Bell*, the Supreme Court held that the need to keep contraband out of penal institutions outweighed an inmate's privacy interest, and the same state interest justifies the searches here. Thus, the Court finds that the strip searches and x-ray searched were reasonable and not in violation of the Fourth, Eighth and Fourteenth Amendments.

 Doctors at the Medical Center performed two rectal exams and an exploratory surgery on Plaintiff. This Court is particularly intrigued with the exploratory surgery performed on Plaintiff. There can

---

5. When conducting an Eighth Amendment and Fourth Amendment analysis, Courts must accord the same "wide-ranging deference" to prison officials charged with maintaining security. *Larkins v. Bartlett*, 1990 WL 1488, 1990 U.S. Dist. LEXIS 79 (S.D.N.Y.1990)(citing *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). "That

deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." *Id.* at 322, 106 S.Ct. 1078.

be no doubt that the surgery performed on Plaintiff posed a risk to his physical well being. Furthermore, this Court agrees that there should be a Court ordered search warrant before performing an exploratory surgery on an inmate's abdominal area.[6] Defendants have not alleged nor is there any evidence that there was a court ordered search warrant allowing the surgery. This certainly weighs against a finding that the surgery was reasonable.

However, the seminal case of *Winston*[7] is not applicable here. The AOC's personnel did not decide or give the order to perform the rectal exams and the surgery on Plaintiff. The decision to perform the rectal exams was made by the staff at the Medical Center. Furthermore, the decision to go ahead with the exploratory surgery was done by Deniz.

█ State officials such as the AOC's personnel should not be at risk of liability under section 1983 for medical decisions made exclusively by physicians. *Sullivan v. Bornemann*, 384 F.3d 372, 377 (7th Cir. 2004). A holding to the contrary would place the AOC's official in the impossible position of having to second guess the medical staff's decision. *See id.* (noting that "a holding to the contrary would place law enforcement officers in the impossible position of having to second-guess the medical judgments of emergency room physicians").

Since the decision to perform the rectal exams and the surgery was made by the staff at the Medical Center,[8] this Court finds that the rectal exams and the exploratory surgery were not done "under color of law." *See id.; see also Williams v. Brann*, 2006 WL 2401112, 2006 U.S. Dist. LEXIS 58578 (E.D.Wis.2006)(holding that a rectal exam conducted by a doctor, a private actor, is not an action under color of law). Consequently, the AOC's staff did not violate any of Plaintiff's constitutional rights. Thus, Plaintiff has failed to prove that the correctional officers of the AOC, among them Caban, acting under color of state law, deprived him of his federal rights.

█ We will now discuss whether Deniz violated Plaintiff's constitutional rights when she decided to and performed the exploratory surgery. Regarding Plaintiff's Fourteenth Amendment claim against Deniz, it is well settled law that the Due Process clause protects a person's bodily integrity. *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 269, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990). "This notion of bodily integrity has been embodied in the requirement that informed consent is generally required for medical treatment." *Id.*

█ "Medical malpractice does not become a constitutional violation merely

---

**6.** We interestingly note that a search warrant is generally required to allow the government to perform an exploratory surgery on a defendant. *See United States v. Garcia–Ortiz*, 261 F.Supp.2d 56, 61 (D.P.R.2003)(Pursuant to *Winston*, this Court denied the Government's request to perform a surgery on a defendant in order to remove a bullet because the safety of the proposed surgery was sufficiently disputed.). However, the case at bar is distinguishable in that the exploratory surgery performed by Deniz was not the result of a government order. On the contrary, the decision was made by Deniz as a doctor working at the Medical Center.

**7.** *Winston v. Lee*, 470 U.S. 753, 766, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985)(finding that a compelled surgical procedure to recover a bullet from beneath the skin of a robbery suspect violates the Constitution).

**8.** The Court recognizes that Plaintiff alleges that, at the Medical Center, the AOC's personnel insisted that Plaintiff had a foreign object inside his rectum. However, the decision to perform the rectal exams and the exploratory surgery was that of the medical staff of the Medical Center.

because the victim is a prisoner." *Daniels v. Williams,* 474 U.S. 327, 333, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)(internal citations and quotations omitted). "Where a government official's act causing injury to life, liberty, or property is merely negligent, no procedure for compensation is constitutionally required." *Id.* State tort law offers an adequate mechanism for redressing injuries inflicted by a negligent doctor. *See id.* (The Court noted that "the enactment of tort claim statutes[ ] reflects the view that injuries caused by such negligence should generally be redressed.").

▇▇▇▇ The Court finds that Plaintiff's Fourteenth Amendment claim is not the appropriate manner of challenging the acts committed by Deniz, especially, when the exploratory surgery was performed after obtaining Plaintiff's consent. The Court notes that Plaintiff may have a malpractice claim against Deniz. However, said claim should be filed solely under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141, and not under the Fourteenth Amendment. As such, the

Court finds that Deniz did not violate Plaintiff's Fourteenth Amendment. Likewise, she did not violate Plaintiff's Eighth Amendment because she did not perform the surgery with the intention of harming or punishing Plaintiff.

▇▇▇ Plaintiff's Fourth Amendment claim against Deniz must also be dismissed. Deniz was acting as a doctor when she performed the exploratory surgery on Plaintiff and not as an official under color of law. Thus, Deniz did not violate Plaintiff's Constitutional rights.

▇▇▇ Defendants and Deniz also sought to dismiss the section 1983 claims against them because they are entitled to qualified immunity. In addition, Defendants Pereira, Fontanez, Diaz, Negron, and Soto contend that they cannot be held liable because there is no *respondeat superior* liability in section 1983 claims. Since this Court has concluded that the acts of the AOC's personnel as well as the acts of Deniz as a doctor did not violate Plaintiff's constitutional rights, the doctrines of qualified immunity and supervisor liability are inapplicable here.[9] Nonetheless, we shall

---

9. Defendants and Deniz sought to dismiss the section 1983 claims against them because they are entitled to qualified immunity. "Qualified immunity is intended to shield public officials 'from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Fabiano v. Hopkins,* 352 F.3d 447, 452–53 (1st Cir.2003)(citing *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In analyzing the qualified immunity defense, the Court must take three steps:

"(I) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." *Burke v. Town of Walpole,* 405 F.3d 66, 77 (1st

Cir.2005)(citing *Limone v. Condon,* 372 F.3d 39, 44 (1st Cir.2004)).

The Second prong of the test requires that "the constitutional right ... was 'clearly established' at the time of the incident such that it would 'be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Jennings v. Jones,* 499 F.3d 2, 15 (1st Cir.2007)(internal citations omitted). "This inquiry requires us to examine the specific factual context in question to see whether the law was sufficiently clear to place an officer on notice of the illegality of his conduct at the time of the incident." *DeMayo v. Nugent,* 517 F.3d 11 (1st Cir.2008). Regarding the third factor "[t]he test is whether the officer's conduct was objectively reasonable." *Berube v. Conley,* 506 F.3d 79, 82 (1st Cir.2007)(Internal quotations and citations omitted).

In the case at bar, Deniz did not violate Plaintiff's constitutional rights. Caban, as a correctional officer of the AOC, also did not

discuss why the doctrine of supervisor liability is inapplicable to the case a bar because by doing so we explain why the claims against Defendants Pereira, Fontanez, Diaz, Negron, and Soto should be dismissed.

### 4. Supervisor Liability

■■■ Pereira, Fontanez, Diaz, Negron, and Soto contend that they cannot be held liable because there is no *respondeat superior* liability in section 1983 claims. It is well settled law that there is no *respondeat superior* liability under section 1983. *Ayala–Rodriguez v. Rullan*, 511 F.3d 232 (1st Cir.2007)(citing *Rizzo v. Goode*, 423 U.S. 362, 375–77, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)). Under section 1983, supervisory liability can only be grounded on the supervisor's own acts or omissions either through the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization. *Whitfield v. Melendez–Rivera*, 431 F.3d 1, 14 (1st Cir.2005)(internal citation omitted). "Absent direct participation, a supervisor may only be held liable where (1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence … amounting to deliberate indifference." *Id.* (internal citations and quotations omitted). A supervisor's action or inaction amounting to deliberate indifference will be found only if "it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Germany v. Vance*, 868 F.2d 9, 18 (1st Cir.1989).

"The 'affirmative link' requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." *Hegarty v. Somerset County*, 53 F.3d 1367, 1380 (1st Cir.1995)(internal citations and quotations omitted).

■■■ Claims of inadequate training require proof that the failure to train was a policy or deliberate choice made by the Defendants and that there is a direct link between the Defendants' inaction and the constitutional violation. *See Bowen v. City of Manchester*, 966 F.2d 13, 18 (1st Cir. 1992). Evidence of an isolated negligent act is not sufficient to satisfy this heavy burden. *See id.* Furthermore, with regards to Defendants' lack of practices and procedures, Plaintiff must show that the supervisors' policies or customs caused the alleged constitutional deprivations. Furthermore, Plaintiff must show that the asserted policy was well-settled and widespread and Defendants did nothing to end the practice. *See Elliott v. Cheshire County*, 940 F.2d 7, 12 (1st Cir.1991).

Pereira, Fontanez, Diaz, Negron, and Soto did not have any direct participation in the events that occurred on July, 2006. Therefore, Pereira, Fontanez, Diaz, Negron, and Soto would only be responsible if their subordinates violated Plaintiff's constitutional rights and their inaction was "affirmatively linked" to Plaintiff's constitutional rights violations. As was previously discussed, Pereira, Fontanez, Diaz, Negron, and Soto's subordinates did not violate Plaintiff's constitutional rights. Therefore, Pereira, Fontanez, Diaz, Negron, and Soto, as supervisors, cannot be held liable.

For the aforementioned reasons, this Court finds that Defendants and Deniz did

violate Plaintiff's constitutional rights. Furthermore, as will be further discussed, Defendants Pereira, Fontanez, Diaz, Negron, and Soto, as supervisors, did not violate Plaintiff's

constitutional rights. Thus, the first prong of the qualified immunity defense analysis is not met. Therefore, the doctrine of qualified immunity is inapplicable.

not violate Plaintiff's constitutional rights. Consequently, Plaintiff's section 1983 claims against Defendants and Deniz shall be dismissed.

### 5. *Supplemental Law Claims*

This Court should decline to exercise supplemental jurisdiction over a plaintiff's supplemental jurisdiction claims when all federal claims are dismissed. *See Camelio v. American Federation,* 137 F.3d 666, 672 (1st Cir.1998)("[T]he balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation.") (citations omitted).

As mentioned previously, Plaintiff may have a malpractice claim against Deniz. Such a claim could be filed in State Court under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141.[10] However, this Court has dismissed all of Plaintiff's federal claims against Defendants, thus, we will not exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

### CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** Defendants' and Deniz's Motions to Dismiss. (Docket Nos. 20, 24). As such, the Court dismisses all claims against Defendants and Deniz. Furthermore, the Court dismisses all federal claims against all of the named defendants in this case. Additionally, Plaintiff's state law claims are hereby dismissed without prejudice. Judgment shall be entered accordingly.

IT IS SO ORDERED.

### MEMORANDUM AND ORDER

Pending before the Court is Plaintiff Angel Luis Sanchez's ("Plaintiff") "Motion

for Reconsideration and for Leave to File Amended Complaint." (Docket No. 27). For the reasons set forth below, the Court **DENIES** Plaintiff's Motion.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 2006, Plaintiff an inmate in the Commonwealth of Puerto Rico Administration of Corrections ("AOC") was suspected of having a cellular phone in his rectum. As a result, the staff of the AOC subjected him to several strip searches, and an x-ray exam. Plaintiff was then transferred to the Rio Piedras Medical Center ("Medical Center") where two rectal exams and an exploratory surgery was performed by the staff of the Medical Center.

On July 10, 2007, Plaintiff filed the present complaint against Defendants Miguel A. Pereira–Castillo ("Pereira"), Hector Fontanez–Rivera ("Fontanez"), Ramon Diaz–Correa ("Diaz"), Gilberto Negron–Falcon ("Negron"), Walter Soto–Hernandez ("Soto"), Miguel Caban–Rosados ("Caban") (collectively "Defendants"), all staff members of the AOC, and Sandra I. Deniz Rocafort's ("Deniz"), the physician that performed the exploratory surgery, requesting money damages under the Civil Rights Act, 42 U.S.C. § 1983, the Fourth, Fifth, Eighth, and Fourteenth Amendment of the Constitution of the United States, the Constitution of the Commonwealth of Puerto Rico and under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141. Additionally, Plaintiff has a medical battery and medical malpractice claim. (Docket No. 1).

On October 22, 2007, Defendants filed a Motion to Dismiss, (Docket No. 20), which was subsequently opposed by Plaintiff. (Docket No. 23). On January 22, 2008,

---

**10.** We certainly express no opinion on the merits of such a potential claim nor should this opinion and order be construed as favoring such a claim on the merits.

Deniz also filed a Motion to Dismiss. (Docket No. 24). Plaintiff did not oppose Deniz's Motion.

On March 19, 2008, this Court issued an Opinion and Order granting the pending Motions to Dismiss. This Court among other things determined that Defendants, who are all employees of the AOC, could not be held liable for an exploratory surgery and two rectal exams performed on Plaintiff. Namely, this Court found that the rectal exams and the exploratory surgery were not done "under color of law" because the decisions to perform said procedures were made exclusively by the Medical Staff of the Medical Center. In reaching this conclusion, we noted that state officials, such as Defendants, should not be at risk of liability under section 1983 for medical decisions made exclusively by physicians. (Docket No. 25).

On March 24, 2008, Plaintiff filed the pending Motion for Reconsideration in which he alleges that our decision to dismiss on the grounds that Defendants could not be held responsible for the physicians' decision to perform the surgery constituted a *sua sponte* dismissal. Plaintiff contends that this Court should set aside its Opinion and Order because *sua sponte* dismissal was improper and, accordingly, accept an Amended Complaint.

Plaintiff further alleges that this Court overlooked that in the complaint he specifically alleged that a correctional officer of the AOC pressured the personnel of the Medical Center to perform the surgery. Moreover, Plaintiff reiterates that the rectal exams and the exploratory surgery performed on him violated his constitutional rights. According to Plaintiff, both procedures were done to obtain evidence and not to respond to health needs. Plaintiff also contends that the fact that the surgery and rectal exams were performed by physicians from the Medical Center and not from staff from the AOC is of no

importance to the constitutional analysis performed by this Court. Additionally, Plaintiff alleges that the exploratory surgery and the rectal exams were encouraged by a member of the AOC personnel and, as such, liability for the damages that resulted from said procedures is attributable to the named Defendants in this case. For the aforementioned reasons, Plaintiff requests that this Court set aside its dismissal of the case at bar and accept an Amended Complaint. (Docket No. 27). Defendants and Deniz opposed Plaintiff's Motion. (Docket Nos. 28 and 29).

## DISCUSSION

### 1. *Sua Sponte Dismissal*

Plaintiff claims that our Opinion and Order constituted a *sua sponte* dismissal. Defendants disagree with Plaintiff's position. According to Defendants, the basis for granting dismissal in the Opinion and Order was exactly the same as that proffered by them in their Motion to Dismiss, to wit, that the decision to perform the surgery on Plaintiff was made by the staff of the Medical Center and not by members of the AOC.

We recognize that "*[s]ua sponte* dismissal should be used sparingly, but is appropriate if it is 'crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile.'" *TMTV Corp. v. Pegasus Broad. of San Juan*, 490 F.Supp.2d 228, 236 (D.P.R.2007)(citing *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir.2002)). This Court has a duty to make sure that the allegations proffered by the parties are adequate. Moreover, the Court cannot be chained to the authorities cited by the parties. "There comes a point when the question arises who is running the court counsel, or the judge. To this there can be but one answer." *Higuera v.*

*Pueblo International, Inc.,* 585 F.2d 555, 557 (1st Cir.1978).

The allegations made by Defendants in their Motion to Dismiss, (Docket No. 20), led this Court to determine that dismissal was proper because the decision to perform the exploratory surgery and rectal exams could not be attributed to Defendants. Furthermore, to address the complicated issues that are present in the case at bar, this Court fulfilled its responsibility and performed an independent research and analysis of the case at bar. Thus, our Opinion and Order did not amount to a *sua sponte* dismissal because our conclusion was the result of our independent research and analysis of Defendants' and Deniz's allegations. Since there is no *sua sponte* dismissal here, we reject Plaintiff's Amended Complaint.[1]

### 2. Defendants' Liability

Plaintiff avers that in our Opinion and Order we did not give sufficient importance to the fact he alleged that a member of the AOC pressured the doctors of the Medical Center to conduct the surgery. With regard to this contention, it is important to stress that we specifically mentioned in our Opinion and Order that this "Court recognizes that Plaintiff alleges that, at the Medical Center, the AOC's personnel insisted that Plaintiff had a foreign object inside his rectum. However, the decision to perform the rectal exams and the exploratory surgery was that of the medical staff of the Medical Center."[2]

This Court finds that the decision to perform both procedures was taken by educated and trained professionals, who have sole responsibility for the medical decisions they take. We find that no amount of encouragement or persuasion on the part of a correctional officer, a lay person, changes the fact that the decisions were made solely by the educated and trained professionals of the Medical Center.[3] Moreover, Plaintiff's contention that the surgery and rectal exams were performed in order to obtain evidence or for medical reasons does not sway this Court to overturn its ruling. Said allegations could be important in determining Deniz's liability. However, it has no bearing on who ultimately made the decision, which is what this Court finds is essential in determining whether Defendants can be liable for the alleged damages suffered by Plaintiff.

### 3. Deniz and the Medical Center's Staff Liability

Deniz was the physician that performed the exploratory surgery on Plaintiff. At the time, she was working for the Medical Center and not for the AOC. The Medical Center is run by the Commonwealth of Puerto Rico but is a separate entity and not part of the AOC.

We interestingly note that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Daniels v. Williams,* 474 U.S. 327, 333, 106 S.Ct. 662 (1986)(internal citations and quotations omitted). "Where a government official's act causing injury to life, liberty, or property is merely negli-

---

**1.** This Court examined Plaintiff's amended complaint and finds that it would not change this Court's ruling.

**2.** (Docket No. 25, n. 8)

**3.** This Court recognizes that a "State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). However, Plaintiff's claims were not dismissed because of lack of state action. Both Defendants and Deniz are employees of the Commonwealth of Puerto Rico.

gent, no procedure for compensation is constitutionally required." *Id.* State tort law offers an adequate mechanism for redressing injuries inflicted by a negligent doctor. *See id.*

This Court finds that the manner in which the rectal exams and the exploratory surgery were performed could be classified as merely negligent acts. As such, whether the aforementioned procedures were performed to produce evidence or for health needs does not change the fact that Deniz and the rest of the medical staff could only be merely negligent. Moreover, even though Deniz works for the Commonwealth of Puerto Rico, she acted exclusively as a physician and not as an AOC official under color of law. Thus, we find no constitutional violation on the part of Deniz or the staff of the Medical Center. The state law tort statute should offer Plaintiff adequate redress for the alleged negligent acts committed by Deniz and the Medical Center's staff.

As such, we find that in the case at bar, Plaintiff may have a malpractice claim against Deniz and the rest of the Medical Center's staff, who were involved in the rectal exam and exploratory surgery. Said claim should be filed solely under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141. However, this Court will not exercise supplemental jurisdiction over Plaintiff's state law claim. Moreover, as mentioned in the Opinion and Order, it is important to stress that we certainly express no opinion on the merits of such a potential claim nor should this opinion and order be construed as favoring such a claim on the merits.

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Plaintiff's "Motion for Reconsideration and for Leave to File Amended Complaint." (Docket No. 27).

IT IS SO ORDERED.